# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS SOCHA,**

        Petitioner,

  -vs-

**Case No. 08-C-994**

**WILLIAM POLLARD,**

        Respondent.

## DECISION AND ORDER

Thomas Socha's habeas petition, 28 U.S.C. § 2254, was remanded by the Seventh Circuit for further proceedings to determine whether it was timely filed, and if not, whether the limitations period should be equitably tolled. *Socha v. Pollard*, 621 F.3d 667 (7th Cir. 2010). For the reasons that follow, the Court finds that Socha's habeas petition was filed outside the statutory one-year limitations period, and it cannot be saved by equitable tolling.

**I.    Background**

Socha had until July 16, 2008 to file his petition (one year after the expiration of time to seek review of his conviction). *Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). On July 15, 2008, Socha filed a miscellaneous motion for a 90-day extension of time to file his petition. On September 19, 2008, Judge Stadtmueller granted Socha's motion and set a December 19, 2008 deadline for filing. Judge Stadtmueller wrote that "Socha's segregated status limiting access to the prison law library appears to have created an impediment to his ability to file his petition on time. Socha's limited access to the library

also appears to be beyond his control." *Socha v. Pollard*, No. 08-MISC-36 (E.D. Wis.) (D. 3). On October 15, 2008, Socha filed another motion for an indefinite extension of time to file his petition. Judge Griesbach denied this motion on October 20, 2008 because he was "unaware of any authority that it would have to make such a determination before the petition was filed or to extend the deadline for filing such a petition beyond the one-year period." *Id.* at D. 6. Judge Griesbach advised Socha to "file his petition as soon as he is able." *Id.*

Socha formally filed his habeas petition on November 19, 2008: one month before the deadline set by Judge Stadtmueller, one month after Judge Griesbach urged Socha to file his petition "as soon as he is able," and four months after the expiration of the statutory one-year limitations period. On February 11, 2009, the Court granted the respondent's motion to dismiss. The Court found that equitable tolling could not save the untimely filing of Socha's petition; that Socha's placement in administrative segregation did not qualify as a "state-created impediment" to toll the limitations period pursuant to § 2244(d)(1)(B); and finally that Judge Stadtmueller's order purporting to extend the limitations period did not bind the Court because it was an impermissible advisory opinion. D. 23.

On appeal, the Seventh Circuit distinguished those cases, particularly *United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000), which hold that a pre-filing motion for an extension of the limitations period does not present a live case or controversy. "Our case is different from *Leon* in precisely the respect that concerned the Second Circuit: the existence, or lack thereof, of a petition for a writ of habeas corpus before the court. In *Leon*, no such

petition had been filed; in contrast, by the time Socha's case reached Judge Randa, and certainly by now, that step has been taken." *Socha*, 621 F.3d at 670. Because the AEDPA statute of limitations defense "is not jurisdictional," *Holland v. Florida*, — U.S. —, 130 S. Ct. 2549, 2560 (2010), "an order accepting a filing after the limitations period has run is not beyond the power of the district court. Instead, it is effective if it can meet the standards for equitable tolling that the Court described in *Holland*." *Socha* at 671.

While the Seventh Circuit agreed that there were "good reasons . . . to be concerned about the *ex parte* nature of Socha's July 15 motion," it still found that the district court "put too much emphasis on the fact that [the motion] was filed before Socha's completed petition." *Id.* The court observed that there is "no absolute bar imposed by Article III on judicial actions closely connected with a case or controversy that has not yet been filed." *Id.* (citing Fed. R. Civ. P. 27, permitting depositions to perpetuate testimony, and 28 U.S.C. § 1782, authorizing federal courts to render assistance to foreign tribunals). Moreover, it is "possible to view a motion like Socha's [the July 15 motion] as the actual petition for a writ of habeas corpus, filed in an incomplete form but with a promise to furnish supporting documentation later." *Socha* at 672.

Therefore, this Court's mandate is to determine whether Socha's July 15 motion for an extension of time to file his petition can qualify as his actual petition. If so, the Court must accept Socha's petition as timely filed. If not, the Court must focus on Socha's November 2008 petition and determine whether it can be saved through the doctrines of

-3-

equitable tolling or equitable estoppel. The Seventh Circuit concluded by providing specific guidance for the appropriate analysis on remand:

> Socha still faces significant hurdles on remand. While he filed his request for a extension of time before the deadline, Judge Stadtmueller did not issue his ruling until well after the deadline. As we noted earlier, this poses a problem only if Socha's July 15 filing cannot serve as the petition itself. If it cannot, however, then Socha is in a difficult position. He was rolling the dice: he might have thought that all would be well if the district court granted his extension, but for all he knew, the court might have denied the July 15 request long after the original deadline expired. At that point, he would have been left with the same equitable tolling and estoppel arguments that we have already discussed. These facts may cause the district court to question Socha's diligence. But the district court should also keep in mind the flexibility that is often appropriate for *pro se* litigants, who are likely not well versed in complex procedural rules.

*Id.* at 672-73.

After the mandate issued, the Court ordered further briefing from the parties, with Mr. Socha proceeding *pro se*. The Court also issued an order directing Mr. Socha to answer fifteen interrogatories under oath. D. 59; Rule 7(b), Rules Governing Section 2254 Cases ("The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge"). The respondent filed a response to Socha's answers. D. 62; Rule 7(c), Rules Governing Section 2254 Cases ("The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness").

## II. Socha's July 15, 2008 Motion for an Extension

The Seventh Circuit cited *Smith v. Barry*, 502 U.S. 244 (1992) and *Listenbee v. City of Milwaukee*, 976 F.2d 348 (7th Cir. 1992) (applying *Smith*) for the proposition that Socha's

-4-

motion for an extension could be construed as his actual petition. In *Smith*, the Supreme Court held that a document intended to serve as an appellate brief may qualify as the notice of appeal required by Rule 3 of the Federal Rules of Appellate Procedure. Rule 3(c) provides that a notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appeal from; and shall name the court to which the appeal is taken." When papers are "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Smith* at 248 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988)). While a notice of appeal "must specifically indicate the litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to the other parties and the courts. Thus, the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Id.* at 248-49.

While Socha's motion does not explicitly request habeas relief, it cites to § 2254 and includes the case numbers pertaining to the criminal proceedings against him in state court (in Forest County and on direct appeal). This makes it easy to infer that Socha is attempting to vacate or overturn those convictions. Rule 2(c)(3), Rules Governing Section 2254 Cases (petition must "state the relief requested"). Socha's motion also names his prison warden as a respondent. Rule 2(a) (petition "must name as respondent the state officer who has

-5-

custody" of the petitioner). However, Socha's motion does not specify any grounds for habeas relief or the facts that would support such grounds. Rule 2(c)(1), (2). Socha's motion is directed entirely at his need for extra time to file his petition. It disavows the possibility that it is actually a habeas petition because it repeatedly states that he does not have enough time or enough information to file his habeas petition. Therefore, Socha's motion is not the "functional equivalent" of what Rule 2 requires a habeas petition to be. *Smith* at 248.

Moreover, while the purpose of a notice of appeal is to provide notice that a judgment or order is being appealed from, the respondent in a habeas action doesn't receive notice unless and until the district court conducts an initial screening and determines that the action may move forward. Rule 4, Rules Governing Section 2254 Cases ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order"). Therefore, to initiate habeas proceedings, a petitioner must do more than simply indicate that he is pursuing or hopes to pursue habeas relief. The petitioner must also include the grounds for relief in his petition so the district court can conduct an initial review. A filing without any grounds for relief is not the functional equivalent of a habeas petition.

### III. Tolling the limitations period

A statute of limitations can be tolled on the basis of either equitable estoppel or equitable tolling. Equitable estoppel "addresses conduct by the defendant that prevents the plaintiff from suing within the statutory period." *Williams v. Sims*, 390 F.3d 958, 959 (7th Cir. 2004). Equitable tolling applies to "situations in which, without fault by the defendant, the plaintiff is unable to sue within the statutory period." *Id.* at 960. Even though the statute includes more specific tolling provisions, these doctrines apply to the one-year limitations period for state habeas petitioners. *Id.* at 960-61; § 2244(d)(1)(A-D). "In *Holland*, the Court confirmed that equitable tolling is available for cases governed by § 2244(d)'s filing periods. . . . We see no reason why, in an appropriate case, equitable estoppel would not also be available." *Socha* at 672.

Equitable estoppel applies in the statute of limitations context if a party took "active steps to prevent" a party from suing on time. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). "One standard example is where the defendant has fraudulently concealed from the plaintiff the existence of a claim against the defendant. . . . Another is where the defendant requested the plaintiff to delay suit while the parties tried to negotiate a settlement." *Williams* at 959-60 (internal citations omitted). Socha argues that he was prevented from filing on time because of his placement in administrative segregation. Even if the prison's policies with respect to administrative segregation somehow prevented Socha from filing his petition in a timely manner, the application of those policies to Socha does not mean that the respondent was taking "active steps" to prevent Socha from filing his

-7-

petition. Socha was placed in segregation in April, 2008 as discipline for a variety of offenses. D. 60, Answer Interrogatory No. 2 (Socha's No. 4) ("Placed in segregation for Group Petitions and Threats. Extended for Contraband and Group Petitions"). The respondent did not know that Socha was attempting to meet any sort of deadline until well after the July 16, 2008 deadline had passed. D. 62, Response to Interrogatories Nos. 3-5, Exhibit A, ¶ 5. Therefore, the respondent did not use administrative segregation as a means to actively prevent Socha from meeting his deadline in July. In fact, when prison officials were eventually informed of the deadline imposed by Judge Stadtmueller, Socha was given priority access to the law library and Socha met his deadline while in segregated status. *Id.*

As for equitable tolling, Socha must show (1) that he pursued his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland* at 2362. Courts acting in this "highly fact-dependent area" are urged to "employ flexible standards on a case-by-case basis." *Socha* at 672 (citing *Holland* at 2563-64). It is the petitioner's burden to "demonstrate his own diligence in pursuing his claim." *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008).

In early July, 2007, Socha requested representation from the Wisconsin Innocence Project. D. 60, Answer to Interrogatory No. 6 (Socha's No. 8). Socha specifically instructed his state public defender to retain his file. D. 60-2. "Attorney Sommers' law practice was located in Madison the same location as the Wisconsin Innocence Project so I figured it would be reasonable and preferential to allow Sommers to retain the file in case the two wanted to collaborate." D. 60, Answer to Interrogatory No. 8 (Socha's No. 10). On August

21, 2007, the Project confirmed receipt of Socha's request. "This letter is to let you know that your case is waiting to be reviewed by a staff person. Once your file has been reviewed, someone from our office will contact you regarding what, if anything, our program can do to help you. Please keep in mind that the Wisconsin Innocence Project receives many requests for assistance. This makes it impossible to respond personally to your questions, or give you a precise time as to when we will be able to evaluate your case. It is possible that it could take a year or more before we are able to evaluate and respond to your request." D. 61-1. On May 16, 2008, the Innocence Project wrote to Socha explaining that it was unable to provide him with any assistance on his case. D. 61-1.

After several unsuccessful attempts to obtain his case file from his attorney, Socha eventually received his file directly from the Public Defender's Office on June 6, 2008. D. 60, Answer to Interrogatory No. 13 (Socha's No. 15). The file included approximately 3,000 pages of discovery, 1,185 pages of court proceeding transcripts, and the briefs filed by Socha's attorney. "The documents were all commingled together and in such disarray it was like someone threw them up in the air in a windstorm which I can only attribute to the institution searching for contraband given the file's [sic] enormousness in any event it took me two and [a] half months to organize the case file in order to investigate its contents." D. 60, Answer to Interrogatory No. 14 (Socha's No. 16).

Socha admits that he didn't do any work on his habeas petition from July 2007, when he asked for assistance from the Innocence Project, until June 2008, when he received his case file from the public defender's office. D. 60, Answer to Interrogatory No. 8 (Socha's

10). So for eleven months out of the one-year limitations period, Socha did nothing but hope that the Innocence Project would take his case and provide some sort of assistance. Socha argues that his faith was reasonable because to "investigate this case is a tremendous undertaking" and he "reasonably believed [the Innocence Project] would not undertake such an investigation if they had no intention [of] helping me file my petition." D. 60, Answer to Interrogatory No. 11 (Socha's 13). Yet no one from the Innocence Project made any direct promises or assurances to Socha that providing assistance was a probable outcome, much less a sure thing. Even assuming that it was reasonable for Socha to believe that the Innocence Project *might* agree to represent him, Socha's complete failure to develop a fallback plan demonstrates that he was not diligently pursuing his rights. Socha did make efforts to obtain his case file, but even that outcome was delayed by Socha's express reliance on the Innocence Project's hoped-for representation.

Once he received his case file, Socha had approximately five weeks to file his petition. Instead, Socha filed the above-described motion for an extension of the limitations period days before the deadline, then waited for a ruling by Judge Stadtmueller as the limitations period expired. As suggested by the Seventh Circuit, this tactic further demonstrates that Socha was not diligently pursuing his rights. Socha complains that it took two and a half months to "organize the case file in order to investigate its contents," but it is unclear why this effort was necessary since Socha's habeas petition parroted the claims that were raised and adjudicated in state court. To draft his petition, Socha merely needed to transcribe the claims that were exhausted in state court onto a standard form habeas petition. Moreover,

it is unclear why the entire content of Socha's voluminous case file was necessary to complete this relatively straightforward task. Socha should have been able to gather and retain the necessary information from other sources, and he should have initiated this task much earlier if he was planning to launch a collateral attack in federal court.

Socha relies upon two Fifth Circuit cases with similar facts: *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998) and *Prieto v. Quarterman*, 456 F.3d 511 (5th Cir. 2006). In *Davis*, the court assumed without deciding that equitable tolling was justified when the district court granted the petitioner's motion to extend the limitations period. 158 F.3d at 808 n.2. In *Prieto*, the court faced a similar scenario: "Although AEDPA applied to Prieto's application, the district court's order granting him additional time for the express purpose of filing his petition at a later date was crucially misleading. Prieto relied on the district court's order in good faith and to his detriment when he filed his petition. As Prieto submitted his petition within the time expressly allowed him by the district court, he is entitled to equitable tolling." 456 F.3d at 515. However, in *Prieto*, the petitioners' request for an extension was filed *and granted* before the expiration of the limitations period.[1] Socha's motion wasn't granted until two months after the limitations period expired. "The likelihood that a district court's order will actually mislead a petitioner into believing that his petition is due beyond the AEDPA limitations period is the critical distinction . . ." *Id.* at 516. Judge Stadtmueller's order did

---

[1] In *Davis*, the petitioner's initial motion for an extension was granted before the expiration of the limitations period, but a subsequent motion for an extension was both filed and granted after the extended period expired. 158 F.3d at 808.

-11-

not "contribute[] to [Socha's] tardiness because that order was issued *after* the AEDPA deadline . . . already expired." *Id.* at 516 (emphasis in original).

In sum, the respondent did not actively prevent Socha from filing his petition, and Socha did not diligently pursue his claims. The limitations period cannot be equitably tolled.

## IV. Certificate of appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Cases. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When, as here, the case is resolved on procedural grounds, a COA should issue when the prisoner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court may presume that jurists of reason would find it debatable that Socha states a valid claim for the denial of a constitutional right since the Seventh Circuit granted a COA when the case was previously dismissed on procedural grounds. The Court also finds that jurists of reason could debate whether its procedural ruling was correct, and the issues

-12-

resolved by the Court after remand are deserving of further development. Specifically, the Court certifies the following issues for appeal: (1) whether Socha's July 15, 2008 motion for an extension of time to file his habeas petition can be considered an "actual petition for a writ of habeas corpus, filed in an incomplete form but with a promise to furnish supporting documentation later," *Socha* at 672; and (2) whether the limitations period is subject to equitable tolling.

**IT IS HEREBY ORDERED THAT** Socha's petition is **DISMISSED**, and Socha's motion for a certificate of appealability is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2011.

                                           **BY THE COURT:**

                                           *s/ Rudolph T. Randa*
                                           **HON. RUDOLPH T. RANDA**
                                           **U.S. District Judge**