# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS R. SOCHA,**

        Plaintiff,

    **-vs-**                     **Case No. 08-C-994**

**REED RICHARDSON,**

        Respondent.

## DECISION AND ORDER

In 2002, after a two-day bench trial in Forest County Circuit Court, Thomas Socha was found guilty of first degree intentional homicide, party to a crime, and sentenced to life in prison. Socha filed this action, a petition for a writ of habeas corpus, almost eight years ago. This case is old because it has already made two journeys to the Seventh Circuit and back. *Socha v. Pollard*, 621 F.3d 667 (7th Cir. 2010) (district court had jurisdiction to consider ancillary motion for extension of the one-year limitations period); *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014) (applying equitable tolling to a habeas petition for the first time ever). Socha's petition, now ready for a merits ruling, is denied.[1]

---

[1] Socha requests oral argument and an evidentiary hearing. Both are unnecessary. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("if the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

The State alleged that Socha, Dennis Drews, Victor Holm, and Beth Mrazik conspired to kill Lance Leonard, who was shot to death with a shotgun and buried in a shallow grave in the woods near Crandon, Wisconsin.

> The murder was carried out by Drews, Holm, and Holm's brother, Vincent, who was not present when the conspiracy was formed. Socha and Mrazik did not participate directly in the shooting and went to several bars that night to establish an alibi. All three of the original co-conspirators testified against Socha. Although their testimony was inconsistent on some of the details, with each of the co-conspirators describing the murder scheme in the light most favorable to himself or herself, they all testified that Socha had at least one motive for killing Leonard and discussed when, where and how to kill him. Socha called Holm several times on the day of the murder to determine whether it had been completed and reacted violently when the police began to unravel the murder plot.
>
> Drews pled no contest to first-degree intentional homicide and testified against Socha in return for the State's recommendation of a life sentence with parole eligibility in twenty to twenty-five years. Drews testified that Socha was afraid Leonard would implicate him in a fraudulent check scheme and that Leonard was aware of Socha's theft of cocaine from his supplier worth $12,000 to $16,000. Socha, Victor Holm and Mrazik discussed killing Leonard at several meetings, and agreed to provide alibis for each other. A bartender at a tavern where one of the meetings occurred testified that they met in his tavern and were suddenly silent when he approached them.
>
> Victor Holm testified against Socha after pleading no contest

district court is not required to hold an evidentiary hearing"). Socha also moves for an order directing the respondent to produce additional portions of the record from state court. These documents are not needed to resolve the instant petition.

to first-degree intentional homicide in return for the State's sentence recommendation of life in prison, with the State taking no position on parole eligibility. Victor testified that Socha wanted Leonard killed because of Leonard's knowledge of Socha's involvement in the fraudulent check scheme and the cocaine theft. He confirmed that he, Socha and Drews agreed on how, when and where to kill Leonard. His testimony and Drews' varied on which of them pulled the trigger.

Mrazik testified against Socha after pleading no contest to reckless homicide based on the State's agreement to recommend probation. She testified that she was present during parts of meeting at which Leonard's murder was discussed. She denied that she was aware of when the murder would take place and did not know that she was assisting Socha in creating an alibi when she went to bars with him on the night of the murder. She did not know the degree of Socha's involvement, but did hear him say, "If you're going to kill him, use buckshot." When it became apparent that the police were about to solve the crime, Socha threatened Mrazik that the mafia would be at her door if anything bad happened to him. She also witnessed Socha holding a gun to Holm's head, shouting, "They know. They know." Mrazik was also threatened by Holm, and she told others of his involvement in the killing so that he would get arrested. After two individuals, Jeff Cole and Kerry Miller, went to the police with Mrazik's information, Socha confronted Miller, asking what she knew about the checks and the murder so he could decide whether to get out of town.

Socha also made statements to the police that acknowledged his involvement in the murder plot. While Deputy Tony Jakubiec transported Socha, Socha asked whether the police had arrested Mrazik because she was involved and knew as much as anyone about the murder. Socha then asked Jakubiec to explain what intent meant because "[h]e did not have any problem being charged with party to a crime, but that he couldn't see why he was being charged with intent to commit homicide."

- 3 -

*State v. Socha*, 2007 WI App 19, 727 N.W.2d 374 (Wis. Ct. App. 2006) (Table).

Under the Antiterrorism and Effective Death Penalty Act, Socha is entitled to habeas corpus relief only if the challenged state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Review of the underlying state court decision is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under this deferential standard, the Court must "attend closely" to the decisions of state court and "given them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). The state court's factual determinations, set forth above, are presumed correct and can only be rebutted with clear and convincing evidence. § 2254(e)(1).

Socha argues that there was insufficient evidence to sustain his conviction. The "relevant question" for this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

- 4 -

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Such claims face a "high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury [i.e., the finder of fact] — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 3 (2011)). Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.*; *see also Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997) (federal habeas review of a *Jackson* claim "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson*'s 'no rational trier of fact' test").

The state court of appeals reasoned that "Socha's incriminating statements, along with direct testimony from the co-conspirators and

- 5 -

Socha's guilty reaction when the plot began to unravel provide overwhelming evidence of his complicity in the murder." 2007 WI App, at ¶ 7. Upon review of the trial transcript, particularly the trial judge's oral ruling at the conclusion of evidence, the Court agrees that the evidence against Socha was overwhelming. For example, the trial judge explained why he chose to credit the testimony of Socha's co-conspirators:

> First of all, the State's grant to those witnesses of concessions which precipitated plea agreements are not such great gifts as to, in my estimation, precipitate perjury by those individuals. Both Mr. Drews and Mr. Holm are either convicted or virtually convicted of the actual commission of the homicide. Mr. Holm pled guilty or no contest during the course of the trial. He is incarcerated for the murder. Mr. Holm has not yet tendered his plea, but on the stand he quite casually and openly indicated that he intended to plead guilty and he gave all of the reasons for pleading guilty. It does not make any sense to me for those two individuals in that situation to attempt to concoct some story about Mr. Socha in order to get the relatively small concessions the State gave them before now.

ECF No. 106-6, at 86-87. Accordingly, Socha falls far short of meeting the "no rational trier of fact" standard set forth in *Jackson*.

Next, Socha argues that his trial counsel was constitutionally ineffective. To succeed on this claim, Socha must show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

- 6 -

Amendment." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Second,

Socha must show that he was prejudiced by the deficient performance. *Id.*

at 687. Prejudice in this context is a "reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have

been different." *Mosley v. Atchison,* 689 F.3d 838, 850 (7th Cir. 2012)

(quoting *Strickland,* 466 U.S. at 694). Pursuant to AEDPA, the Court

applies "doubly deferential judicial review," and "because the *Strickland*

standard is a general standard, a state court has even more latitude to

reasonably determine that defendant has not satisfied that standard."

*Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009).

Socha argues that his counsel was ineffective for failing to present

evidence that Victor Holm committed a murder in Arizona and was

acquitted after orchestrating a cover-up of his involvement in the crime.

Socha also posits a series of witnesses whose testimony would have

undermined Holm's credibility by suggesting that Holm conspired from his

jail cell to both exonerate himself and falsely implicate Socha. Even if

deficient, the Court agrees with the court of appeals that Socha cannot

show prejudice:

> Evidence that Holm was capable of committing murder
> without prompting from Socha does not undermine evidence
> that Socha conspired to kill Leonard. It only shows that he

- 7 -

Case 2:08-cv-00994-RTR   Filed 05/17/16   Page 7 of 10   Document 111

enlisted the aid of an accomplished killer. Evidence that Holm was able to orchestrate an acquittal on the Arizona murder charge does not establish a basis for believing that he would or could orchestrate evidence to inculpate Socha after Holm himself pled no contest. Neither Holm nor Drews received substantial concessions from the State in return for their no contest pleas. Socha's theory would require the court to believe that they would admit their own involvement for little concession by the State and for some reason implicate an innocent man.

2007 WI App, at ¶ 11. Moreover, Socha's argument "fails to account for his own damaging statements to the police that displayed his knowledge of the conspiracy and expressed no problem with being charged as a party to the crime." *Id.* Finally, regarding testimony about Holm's apparent dislike for Leonard: "As the trial court noted, each of the conspirators may have had independent reasons for wanting Leonard dead. Proving that Holm wanted to kill Leonard for his own reasons does not undermine the State's evidence that Socha had reasons for murdering Leonard." *Id.*, at ¶ 12. The state court reasonably determined that Socha was not prejudiced by his counsel's alleged failings.

Finally, Socha argues that he was prejudiced when the prosecution withheld exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also Carvahal v. Dominguez*, 542 F.3d 562, 566-67 (7th Cir. 2008) (listing elements of a *Brady* claim); *Strickler v. Greene*, 527 U.S. 263, 280

- 8 -

(1999) (evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). The withheld evidence pertains to an interview with Roy Swanson, who shared a jail cell with Holm in 2001-2002. Swanson told investigators that Holm confessed various details of the Leonard murder and bragged about getting away with murder in Arizona. Once again, neither Holm's violent tendencies, nor his cover-up of a previous murder, undermines the guilty verdict in this case. Socha also argues that the Swanson transcript could have been used to undermine Holm's credibility because, according to Swanson, Holm was preparing to claim that Socha coerced him into joining the conspiracy. Holm's discussions with Swanson came well before Holm eventually agreed to plead guilty. By the time Holm testified at Socha's trial, Holm had entered a plea agreement in exchange for minor concessions from the State. Thus, Holm's prior statements to Swanson about a coercion defense do not undermine the credibility of Holm's testimony at Socha's trial.

In connection with this Order, the Court must decide whether to issue a certificate of appealability, which involves an inquiry into whether reasonable jurists could debate whether the petition should be resolved in a different manner, or that the issues presented were adequate to deserve

- 9 -

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Neither standard is satisfied, so the Court will not issue a certificate. Rule 11(a), Rules Governing Section 2254 Cases.

**IT IS HEREBY ORDERED THAT** Socha's petition is **DENIED**. Socha's motion for an order directing the respondent to file additional records from state court is also **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of May, 2016.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 10 -